## JOYCE v. BODE.

A WILL devising and bequeathing "to my wife M. of * * * all my real estate and personal property * * * and I constitute and appoint my wife M. executrix * * * but if she gets married again then her authority must seize and all my real and personal property must be sold and I make the following bequests * * * and after my wife's death or if she gets married again then I appoint * * * Rev. Q. or his successor executor * * * giving him full power and authority to sell or any part of my real estate, personal or mixed, and at such times and on such terms and for such purposes as he may deem well," carries to the wife a life estate and the bequests and residue were to become operative upon her remarriage or death and then to be administered by Rev. Q. or his successor.

Before MEMMINGER, J., Charleston, July, 1905. Affirmed.

Action by Mary B. Joyce, administratrix of William Meagher, against Kate L. Bode, Mary V. Willis, Sallie A. Shinholser, Johanna B. Blanche, Wm. P. Cullinane, Jeremiah J. Cullinane, Mary A. Maguire, Mary A. Hobenitch, Ellen McCormick, St. Patrick's Church and Rev. Wm. J. Wright, its pastor. The Circuit decree is:

"This is an action brought by the plaintiff (who has qualified as administratrix with the will annexed) for the construction of the will of the late William Meagher, of Charleston, who died in January, 1904, leaving a considerable estate of both real and personal property. His widow, Mary Meagher, died in September of the same year, intestate, and the plaintiff is also the administratrix of her estate. No question has been argued before me except upon the construction of the will of William Meagher, and this decree purports to go no further into the case than to construe said will.

"Three distinct constructions are urged upon the Court by the various attorneys for the parties in possible interest.

"The *first* is the construction sought on behalf of the plaintiff, Miss Joyce, whereunder the estate would go to the next

of kin of the widow of William Meagher. The *second:* Is whereunder the estate would go to the next of kin of William Meagher himself; and the *third* is whereunder the estate would go to certain institutions of the Catholic Church. The case was referred to Master Sass to take testimony and the same has been taken and reported, including a photographic copy of said will, which counsel have agreed shall be the copy in evidence and the same is hereto next attached as a part of this decree:

" 'State of South Carolina,
        " 'In the Name of God, Amen.

" 'I William Meagher of Charleston and State aforesaid. of Sound and disposing mind and Memory do Make Publish and declare this to be My last Will and Testament hereby Revoking all others heretofore Made I direct first all my just debts, funeral and other expenses be first Paid.

" 'I give, devise and bequeath to my wife Mary Meagher of Charleston and State aforesaid all My Real Estate and Personal Property of which I may die Seized and Possessed of and I Nominate, Constitute and appoint My Wife, Mary Meagher of Charleston and State aforesaid, Executrix of this My last Will and Testament Without Bond as long as she Remains My Widow, but if She gets Married again then her authority must seize and all My Real Estate and Personal Property must be sold and I make the following Bequests:

" 'I leave one Thousand Dollars for a Monument to be Put on My lot in the Cemetery With Brick foundation and granite Stone around the same and the Pastor of Saint Patrick's Church to have the Same done for me. I leave Three hundred dollars to buy a bond for the keeping in Perpetual Care of My two lots in the Cemetery and the Pastor of Saint Patrick Church to have the Same done for Me.

" 'I leave to Saint Patrick one Thousand dollars for a perpetual Mass to be said in Saint Patrick Church once a month for My self and Wife and My Father and Mother Jeremiah and Bridget Meagher also My Wifes Father and

Mother Michael and Margaret Joyce. I leave to Saint Patrick's Church the amount of Eight Thousand Dollars for the purpose of Putting an iron Railing fence With Brick foundation and granite Stone along the Same from the one Now in front of the Church along Radcliffe Street to the East End of the Church lot and More if wanted to Complete the Work.

" 'I leave five hundred Dollars for to help to Educate young Men for the Priesthood, I leave My two Nephews Jeremiah and William Cullinane the amount of two Dollars Each and My Nieecs Mary Catherine Sally and Johanna Maiden Cullinane the amount of two dollars each.

" 'The Rest and residue I leave to the Rector of Saint Patrick's Church to be turned over by him to the Mother in Charge of the City orphans on Queen Street.

and after My Wifes Death or if She gets Married again then I Nominate, Constitute and appoint the Rev. D. J. Quigley or his Successor Executor of this My last Will and Testament giving him full Power and authority to Sell or any Part of My Estate Real Personal or Mixed and at Such times and Such terms and for Such Purposes as he May deem Well at Public or at Private Sale.

" 'Witness My hand and Seal at Charleston State aforesaid November the fourth Nineteen hundred and 1903 Three William Meagher

" 'Signed Sealed Published and declared by the said Testator William Meagher as for his last Will and Testament in the Presence of us Who at his Request in his Presence and of Each other have hereunto Subscribed our Names as Witnesses

1. Edward W. Wynne
1. T. G. Baker
3. Elliott T. Henery'

"The master also reported certain testimony of a witness offered to explain the intention of the testator as said to have been expressed to the witness; and this testimony (being that of a witness Corbett) is reported subject to objec-

tion and motion to strike out.   I shall dispose of this ques-
tion *in limine,* and sustain the objection to the testimony
and order the same stricken out: Which I do under the
authority of *Clarke* v. *Clarke,* 46 S. C., 240, wherein the
law bearing upon this point is carefully stated by Chief Jus-
tice Pope as follows: 'We have always understood the rule
of law as enforced by the Courts of this State regulating
the competency of testimony of this character to be that any-
thing that will show the surroundings of the testator—his
family, their names, age or sex, his property, its name, value
or character, his use of words, if in any way peculiar, or to
explain any ambiguous expressions occurring in the will—
is admissble.   We have never known that testimony as to
*intention,* separate and apart from that conveyed by the lan-
guage used in the will could be held competent.'

"The testimony of the witness Corbett here offered does
not come within this rule, and it is therefore excluded and
not considered.

"I shall also endeavor to disabuse my mind entirely of the
statement of counsel outside of the record, made during the
argument, as that both testator and his wife were aged peo-
ple, at the time of the execution of the will and the testator's
death; the improbability of friendly relations existing be-
tween him and his wife's next of kin; his devotion to the
Catholic Church of which he was a member; and that the
Rev. D. J. Quigley was rector or pastor of Saint Patrick's
Church, of which the Rev. William J. Wright, named as a
defendant in the case, is now pastor; and shall confine my
search for a proper legal construction of this will to the
terms of the will itself: Bearing in mind that, in construing
the will I must be governed entirely by that which is writ-
ten within the 'four corners' of the instrument; the intention
of the testator as therein expressed, being (to use the trite
but hackneyed phrase) the 'pole star of construction.'

"It will be observed that the opening clause, and the attes-
tation clause and the clause appointing Rev. Quigley as ex-
ecutor of Mr. Meagher's will, differ widely from the other

clauses, having evidently been copied from some more skill-fully prepared will which had been examined at some time or other by him. The rest of the will shows an attempt on the part of a man of little education and *inops consilii*, to construct a will providing for the distribution of his property with the manifest dominant intention of making certain institutions of the Catholic Church his beneficiaries—these benefits to take effect upon the death or remarriage of his widow; and the details of and provision for carrying out these benefits indicate that they had been carefully thought out and were dear to his heart. The language itself of these portions of the will is crude and all without punctuation, and even the paragraphing is unusual, but the formal execution of the will complies with all legal requirements. The clauses chiefly to be considered are as follows:

" 'I give devise and bequeath to my wife Mary Meagher of Charleston and State aforesaid all my real estate and personal property of which I may die seized and possessed of and I nominate constitute and appoint my wife Mary Meagher of Charleston and State aforesaid Executrix of this my last will and testament without bond as long as she remains my widow but if she gets married again then her authority must seize and all my real estate and personal property must be sold and I make the following bequests.'

"Then follow certain dispositions of the proceeds of sale chiefly for the benefit of and to be under the charge of the pastor of Saint Patrick's Church; the residue to the Catholic Orphan Asylum on Queen street, in Charleston.

" 'and after my wife's death or if she gets married again then I nominate constitute and appoint the Rev. D. J. Quigley or his successor executor of this my last will and testament giving him full power and authority to sell or any part of my estate real personal or mixed and at such times and such terms and for such purposes as he may deem well at public or at private sale.'

"The question is, what estate did the widow take under

this will? She died shortly after the testator, intestate and unmarried, and they had no children.

"If she took the fee defeasible only upon her remarriage, her next of kin are now entitled to the property. If she took a life estate at most, and the bequests enumerated in the will, and the residue after such bequests, became operative upon her remarriage or death, then the executor named to succeed her, as his successor, upon either contingency, takes the property as trustee to carry out these provisions. If she took a life estate at most and the bequests were to become operative only upon her remarriage and not also upon her death, then the remainder is too indefinitely disposed of to have any effect, and the estate would revert to the heirs of the testator.

"All three of these constructions have earnest support, as above stated.

"My conclusion is in favor of that construction which holds that the wife took a life estate at most, and that the bequests and the residue were to become operative upon her remarriage or death, and to be then administered by the then constituted pastor of Saint Patrick's Church.

"I might, of course, stop right here, as it is the conclusion only that counts, but I will endeavor to justify my construction of this will as briefly as I can, and as the result of the careful study I have given to the questions involved; keeping before me as I have done, the rule so well expressed in the case of *Howze* v. *Barber*, 29 S. C., 471, to wit: 'The cardinal rule is to seek for the intention of the testator not by resorting to conjecture as to what was likely to have been his intention, but by a careful consideration of the language which he has used, aided by such rules of law as may be applicable. We are to read the will as a whole, and from its terms ascertain as near as practicable, what was in the mind of the testator when the will was executed.'

"What, then, was the intention of William Meagher, as gathered from the reading of this will? I take it to be perfectly manifest that he intended his wife to have this prop-

erty during her life, if she did not remarry, and after her
death or remarriage, that the Rev. Quigley, or his successor
in the office of pastor of Saint Patrick's Church, should
supervise and control the distribution of it, according to
the detailed items set out in the will. This is the common
sense, everyday construction which would naturally be put
upon it; and the reply of the ordinary individual to any
other disposition which might be ordered by the Court (as
that it should go to remote blood relatives of the widow,
or to relatives of the testator, some of whom are actually
'cut off with a shilling' in the will itself) would, I think, be
—'well, you may have construed that will according to law,
but you have not done with his property what the man meant
should be done with it!'

"Read the will, and it is perfectly apparent that the man
who wrote it knew nothing about our statute which passes
the fee without words of inheritance; or void for indefi-
niteness; of other high-sounding legal phrases. When he
says in the will that he gives, devises and bequeaths the
property to his wife, but if she remarries then he makes cer-
tain bequests to be carried out under the direction of the
pastor of Saint Patrick's Church; and after specifying these
bequests, goes on and provides *that after his wife's death* or
remarriage the Rev. D. J. Quigley, or his successor, shall
take charge of the estate, it is perfectly evident to my mind
that these bequests (one of which is to provide for masses to
be said for the repose of the soul of himself *and his wife*)
were in his mind, to take effect after her *death* or *remarriage,*
and were to be carried out by the Rev. Quigley, or his suc-
cessor, as pastor of Saint Patrick's Church; and construing
the two clauses of the will together, as we must the death of
the wife, is as much a limitation of the estate granted her,
as if distinctly written into both clauses of the will.

"If he only intended the bequests to become operative
when his wife remarried and not upon her death, why put
in the last clause quoted at all? This last clause clearly
provides a means for the carrying out of the bequests and

distribution of the residue of the estate, either upon the remarriage or death of the wife. And under the clause appointing him executor the pastor of Saint Patrick's Church was given a free hand to sell or otherwise dispose of the property and for such purposes in making the bequests effectual as he might deem best. If he had meant her to take the property absolutely, unless she remarried why provide for an executor for the estate after her death? Plainly to carry out these bequests.

"The question, then, is, can the intention of the testator, as derived from his will, be carried out and made effectual by construing the will according to fixed rules of law? I think it can, and should be.

"There are two clauses in the will to be considered as above set out. Now it appears to me that construing these clauses together, only a life estate at most, ever passed to the wife, and upon her death the estate became vested in the pastor of Saint Patrick's Church, as trustee-executor to carry out the bequests made by the testator for the benefit of the institutions of his church, with the residue for the Catholic Orphan Asylum, on Queen street, he being vested as trustee-executor to carry out such bequests, with ample power to sell the property for such purpose as he may deem well in making the same effectual.

"It is not a case in which under section 2483 of the statute the estate would be a fee simple. The language of section 2483 is as follows: 'No words of limitation shall be necessary to convey an estate in fee simple by devise, but every gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator expressed or implied.'

"It is, therefore, evident that in order to determine whether a devise in a will passes the fee, the entire will must be considered, as in all other cases, where it is sought to ascertain the intention of the testator. If this devise stopped with the first clause quoted, 'I give devise and bequeath to my wife Mary Meagher * * * all my real estate and

personal property of which I may die seized and possessed
of and I nominate my wife Mary Meagher  *  *  *  exe-
cutrix of this my last will and testament'—a case would be
presented distinctly within the provisions of section 2483, and
Mary Meagher would have taken a fee simple estate in the
real estate and an absolute interest in the personal property.
But the other words in the clause of the will, 'So long as she
remains my widow,' and in the second quoted clause of the
will, *'and after my wife's death,'* or 'if she gets married
again,' bring this will within the exception stated in the
statute, 'unless such a construction be inconsistent with the
will of the testator, expressed or implied.' The intention
here is expressed, or at least there is the strongest implica-
tion, to be drawn from the language used, that the estate
shall be sold and the proceeds paid out for the institution of
the church as directed upon her death or remarriage. The
section of the statute extending the estate to a fee, or fee
defeasible only upon her remarriage, cannot be invoked, be-
cause it clearly appears from the terms of the will itself that
the intention of the testator was clear to limit it at most to
an estate for her life.

"In order to maintain plaintiff's position that the first
quoted clause of the will devising the property to the wife
unless she remarry, gives her a fee defeasible upon her
remarriage, under the statute which supplies words of inher-
itance, we would have to eliminate that portion of the statute
which says, 'unless such a construction be inconsistent with
the will of the testator, expressed or implied,' because look-
ing to the later clause of the will to see what is the will of
the testator expressed or implied, as the statute requires us
to do, we find him providing for the administration of the
estate *after her death,* which is a provision showing that only
a life estate was intended. Had the entire estate been given
to her in fee simple, where the necessity for providing for
further administration of the estate after her death, by an
executor of the testator as to property which from thence-

forth would cease to be that of his estate and be that absolutely of the widow?

"Plaintiff's attorneys, in support of their position, invoke the doctrine laid down in *Moore* v. *Sanders,* 15 S. C., 442, and *Howze* v. *Barber,* 29 S. C., 470, that where an absolute estate is first created it cannot be cut down to a lesser estate by any subsequent language in the will less decisive than the language by which it is created; but I think that this position is made untenable here, and the cases cited are clearly distinguishable from this case, because here there is no decisive language creating a fee simple in the wife, but the fee simple (or fee defeasible only upon the remarriage of the widow) is sought to be created and written into the will by adding the effect of the statute to the words actually used in the will; and yet, in my opinion, the statute cannot be invoked here, for the reason already stated.

"As to the construction contended for by the attorneys for the next of kin of William Meagher, that the widow took a life estate and that no provision is made for the estate after her death, and that, therefore, there is an intestacy then obtaining and the estate reverts to the next of kin of the testator; I think this construction is untenable. In the first place, the law abhors intestacy, and this construction proceeds upon the idea of eliminating from the will all provisions as to the bequests unless there was a remarriage; where, as, I think, under the last quoted clause of the will, it is quite apparent, not that there is a mere naked appointment of an executor to sell property and dispose of it as he may see fit (which it is contended would be void for uncertainty and indefiniteness), but that that appointment is made with reference to the carrying out of the bequests upon the *death or remarriage* of the widow, and the power of sale and right to dispose of the property as the executor may deem best is to be a power incident to and necessary for the proper carrying out of the bequests. In other words, I do not think the will can bear the construction that those bequests were only to become effective in case of the remarriage of the widow but upon

her death or remarriage, as stated in the last quoted clause of the will, wherein the executor is manifestly for that purpose appointed. The scheme of the will, as before stated, was evidently that these bequests should not become effective during the life of the widow, unless she remarried; but should become effective at her death or remarriage. That was the dominant thought in the mind of the testator. It requires no resort to conjecture to decide that point, reading the will as a whole, and that we must do according to the well known rules of law, already referred to.

"It would serve no useful purpose to further amplify this opinion, or even attempt to refer to the many subtle distinctions sought to be deduced from the decisions of our Courts as applied to this controversy, by the learned lawyers who participated in the argument before me. I have weighed and considered all of them so far as in my power lay, and in confidently announcing my conclusion, as above set forth, I at least feel that I have made an earnest effort to add one cubit to the structure built of 'the perfection of human reason,' which the law purports to be.

"As already stated herein, this decree covers only the question of the construction of the will of William Meagher. Upon this decree, therefore, the attorneys for the parties herein, who will take the property under the will so herein construed, must apply to the Court for such further orders and proceedings as they may deem necessary to effectuate the same."

The plaintiff appeals upon the following grounds:

"First. Because his Honor erred in holding that Mary Meagher only took an estate for life, under the will of her deceased husband, William Meagher; whereas, his Honor should have held and adjudged that the said Mary Meagher took an estate in fee simple absolute, by the terms of said will, subject to be defeated only upon her remarriage, and such event never having happened, that the said estate be-

came absolute upon her death, and subject to distribution among her heirs and distributees at law.

"Second. Because his Honor erred in holding and adjudging that the estate of the said William Meagher vested upon the death of his wife in the pastor of St. Patrick's Church, as trustee-executor to carry out the bequests made by the testator, for the benefit of the institutions of his church, with the residue for the Catholic Orphan Asylum, on Queen street, and that he was vested with ample power to hold said property, and to sell and dispose of the same for such purposes; whereas, he should have held that all of said estate yested in the heirs and distributees at law of Mary Meagher, she having died intestate.

"Third. Because his Honor should have held, that by the terms of the will of William Meagher, all of his estate, both real and personal, vested in his wife, Mary Meagher, in fee simple absolute, subjected to be defeated only upon her re-marriage; and such event having never occurred, the estate so devised became fixed and absolute, and that no condition subsequent in said will had the effect of reducing or cutting down said estate so devised, and bequeathed to that of an estate for life, or any lesser estate."

The defendants, Kate L. Bode, Mary V. Willis, Sallie A. Shinholser, Johannah B. Blanch, William P. Cullinane and Jeremiah J. Cullinane, appeal upon the following grounds:

"First. Because his Honor, the presiding Judge, erred in holding that under the will of William Meagher the bequests and disposition of the residue were to become operative upon the death of his widow, Mary Meagher, to be then administered by the then constituted pastor of St. Patrick's Church. Whereas, his Honor should have held and adjudged that the will of the said William Meagher made no lawful provision for the disposition of his property after the death of his said wife, and the same, therefore, upon the happening of that event, became vested in his heirs and distributees.

"Second. Because his Honor erred in holding and adjudging that the estate of the said William Meagher upon the

death of his widow, Mary Meagher, vested in the pastor of St. Patrick's Church as trustee-executor to carry out the bequests made by the testator for the benefit of the various institutions of his church, and that he was vested with ample power to hold said property and to sell and dispose of the same for such purposes; whereas, he should have held that no adequate provision is made for the disposition of the estate after the death of his widow, and that, therefore, an intestacy then obtained and the estate became vested in the next of kin of the testator.

"Third. Because his Honor should have held that under the will of the said William Meagher, his widow, Mary Meagher, took a life estate in his property, and that upon her death the same became vested in his heirs at law and distributees, for the reason that the clause in the said will purporting to dispose of the same after her death is void for uncertainty and indefiniteness."

The defendants, St. Patrick's Church, and Rev. Wm. J. Wright, also moved the Court to affirm the said decree on the ground "that under the disposition of the estate to the widow so long as she should remain unmarried, she could not in any event take more than a life estate, and that the presiding Judge should have rested his decree as well upon that ground as upon the ground set forth in his decree."

*Messrs. Legare & Holman,* for plaintiff-appellant, cite: 29 S. C., 467; 1 Speer, 412; Speer Eq., 412; 15 S. C., 442; 21 Pick., 42; 3 Ves., 324.

*Mr. B. A. Haygood,* also for plaintiff-appellant, cites: 35 S. C., 59; Code 1902, 2483; 29 S. C., 46; 31 S. C., 13; 2 Hill, 420; 5 Rich., 202; 29 Ency., 1 ed., 350; 1 Bail. Eq., 298; 1 McC., 41; 19 S. C., 302; 35 S. C., 125; 1 McC. Eq., 35; Rice Eq., 10; 46 S. C., 240.

*Messrs. Ficken, Hughes & Ficken,* for defendant-appellants, cite: 6 Mass., 163; 19 N. Y., 344; 4 Jones Eq., 281;

6 Sin., 266; 86 Pa. St. R., 386; Fearne on Con. Rem., 151; 4 How., 464; 4 Grat., 477; 2 Paine, 366; Jarman on Wills, 841, 472, 39; 6 Ves., 100; 32 Ala., 645; 7 Cush., 209; 6 Pet., 84; 67 Mass., 257; 43 N. J. Eq., 417; 30 Ency., 748; 125 N. C., 136; 170 Mass., 49.

*Messrs. Mordecai & Gadsden,* contra, for St. Patrick's Church, cite: Code of 1902, 2483; 30 Ency., 748; 125 N. C., 136; 170 Mass., 49; 4 Kent., 26, 27; 2 Blackstone Com., 121; 32 S. C., 72; 140 Mass., 49; 31 S. C., 468; 2 Jarman on Wills, 469, note M.

April 13, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. This appeal seeks to review the construction of the will of William Meagher in the decree of Judge Memminger, herewith reported, upon the grounds stated in the exceptions thereto also reported herewith. The will so far as material is as follows:

"I give devise and bequeath to my wife Mary Meagher of Charleston and State aforesaid, all my Real Estate and personal Property of which I may die seized and possessed of and I nominate, constitute and appoint my wife Mary Meagher of Charleston and State aforesaid executrix of this my last Will and Testament without Bond as long as she remains my Widow, but if she gets married again then her authority must seize and all my Real Estate and Personal property must be sold and I make the following bequests." (Then follows the bequests.)

"The rest and residue I leave to the Pastor of Saint Patrick's Church to be turned over by him to the Mother in charge of the City Orphans on Queen Street.

"And after my wife's death or if she gets married again then I nominate, constitute and appoint the Rev. D. J. Quigley or his Successor Executor of this my last Will and Testament, giving him full power and authority to sell or any part of my Real Estate, Personal or Mixed, and at such

times and such terms and for such Purposes as he may deem well at Public or at Private Sale."

We think it clear that the Circuit Court was correct in construing the will to mean that the wife took a life estate at most and that the bequests and the residue were to become operative upon her remarriage or death and to be then administered by the then constituted pastor of Saint Patrick's Church. We do not deem it necessary to attempt to add to the reasons given in the Circuit decree, and will only refer to the following authorities in support of the decree: 30 Ency. Law, 748; *Fuller* v. *Wilbur,* 170 Mass., 506, 49 N. E. Rep., 916; *In re Brooks' Will,* 125 N. C., 136, 34 S. E. Rep., 265; *Rose* v. *Hale,* 185 Ill., 378, 76 Am. St. Rep., 40. See, also, *Snelling* v. *Lamar,* 32 S. C., 77, 10 S. E., 825; which, as applied to a deed, holds that if an estate be given to a woman during widowhood, she takes an estate for life determinable upon her remarriage. This rule may be applied to the will in this case, since, for the reasons given in the Circuit decree, section 2483 does not require that the gift to the wife shall be considered a gift in fee. We are perfectly satisfied also with the view of the Circuit Court that the bequests were not conditioned on the remarriage of the wife, but became operative on her remarriage or death, and that there was no intestacy.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.